**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

HERBERT NEWMAN,

                Petitioner,

v.

                                                CIVIL CASE NO. 04-60107
DOUG VASBINDER, Warden,                        HON. MARIANNE O. BATTANI
G. Robert Cotton Correctional Facility,

                Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

**I.    INTRODUCTION**

      Before the Court is Petitioner Herbert Newman's June 2, 2004, 28 U.S.C. § 2254 Petition

for a Writ of *Habeas Corpus* (Doc. # 1).  Petitioner Herbert J. Newman, Jr., is an inmate in the

custody of the Michigan Department of Corrections.  In his pro se application, Petitioner

challenges his convictions for first degree murder in violation of MICH. COMP. LAWS ANN. §

750.316, and possession of a firearm during the commission of a felony in violation of MICH.

COMP. LAWS ANN. § 750.227b.  He was sentenced to life imprisonment for the murder

conviction plus a consecutive two year term for the firearm conviction.  The government filed a

response December 16, 2004.  No oral argument was heard pursuant to Local Rule

7.1(e)(1)(E.D. Mich. Sept. 8, 1998).

      On July 30, 1996, Kristina Bell was shot and killed.  The evidence adduced at trial

established that Petitioner and Bell were live-in lovers.  Deborah Hooks also lived with

Petitioner and Bell and admitted that she was sexually involved with Petitioner.  It is not clear as

to whether Bell knew of Petitioner's sexual involvement with Hooks, although it appears that Petitioner and Bell argued on the night of her murder, in part, about Hooks.

The night of the murder at about 11:00 p.m., Petitioner and Bell argued in the house. Hooks testified that she could hear them exchange angry words, but was not able to ascertain the content of their argument. Immediately after overhearing the argument, Petitioner came into Hooks's room and told her, "It's over. It's over." Petitioner then gave Hooks a cellular phone and asked her to wait for his call. Petitioner told Hooks that he and Bell were leaving to pick up a truck. Hooks testified that Petitioner seemed "impatient" and "upset" at the time. Hooks also testified that Petitioner had never before given her a phone before leaving the house or asked her to await his call. A short while later, Petitioner left the house with Bell.

A few hours later, at about 2:30 a.m., Hooks received a telephone call from Petitioner asking her to pick him up. Petitioner then drove Hooks past the van that he and Bell had left the house in. There were police around the van. Hooks asked Petitioner what was going on and Petitioner responded that he "just had to see." Petitioner then told Hooks that there was an argument about her and money. Petitioner told Hooks that there was a gun, but she testified that she "never really got an understanding about how the gun appeared, whose gun it was." Petitioner claimed that he and Bell were struggling after she pulled the gun on him, and that while he struggled back, the gun went off killing Bell. Hooks testified that, based on what Petitioner told her, she initially assumed that Bell was shot in the van, but after she drove by and saw that there was no blood on the van, she believed her assumption to be incorrect. The way Petitioner described the incident, she also assumed that Bell was only shot once. Petitioner then asked Hooks if she still felt the say way about him. Hooks told Petitioner that she was afraid that

2

the he might shoot her too.  Petitioner assured Hooks that he would never do to her what he had done to Bell.

Bell was found outside the van.  She had been shot twice, once on the left back of the neck just below the hairline, and once in the mid-left area of her back.  There was no evidence of close range firing.  Bell also suffered blunt trauma injuries consisting of: bruises on the right chest; the right side of the upper and lower lip, the left hand, and the top left side of the head. The trauma to the head was severe enough to cause bleeding to the brain.

Petitioner testified on his own behalf at trial.  He testified that he was initially contacted by the Highland Park police on July 30, 1996.  He received a call from the police department and was told that the detectives investigating Bell's death wanted to interview him.  He went to the police station with his children, but told to return home because the officers were in the field. Later that day, Petitioner was arrested at his house and brought to the Highland Park police station.  He was told he could not make a phone call until after the interview.  Petitioner spent the night in custody, and did not eat or sleep during the night.  The following day, after being advised on his <u>Miranda</u> rights, Petitioner was again questioned by detectives.  Petitioner indicated that he did not wish to make a statement to the police, but did so only after he was told that Hooks would be charged and would lose her job and custody of her child.  He also testified that he asked for an attorney, but was told that he could not be arraigned unless he first made a statement.  In his second statement, Petitioner recounted how he and Bell had argued, that Bell became violent toward him, and that Bell reached into her purse and pulled out a pistol. Petitioner stated that Bell was shot during a struggle for the gun.  Petitioner then asked if he could write a note to Hooks.  Petitioner wrote a note addressed to Hooks that was confiscated by

3

the detective conducting the interview.  In the note, Petitioner expressed remorse  that he

"dragged [Hooks] into this."  Petitioner was subsequently convicted for first degree murder and a

related firearm charge.  Petitioner filed a petition for a writ of *habeas corpus* pursuant to 28

U.S.C. § 2254 that makes the following claims:

> I.  Petitioner was deprived of his rights to Due Process and Equal Protection because the evidence presented at trial was insufficient to support a first degree murder conviction.

> II.  Petitioner was denied effective assistance of counsel because his attorney failed to file a motion to suppress his statements to the police, and failed to pursue and convey a potential plea offer to a lesser offense.

> III.  Petitioner was denied his right to Due Process because the prosecutor personally vouched for the veracity of his case, and improperly injected the prestige of his office into the jury's deliberations.

> IV.  The trial judge failed to properly instruct the jury on the defense of accident and voluntary manslaughter.

> V.  The Highland Park Police arrested and detained Petitioner for questioning, coerced him into making a statement, and denied Petitioner the right to counsel during the interrogation.

> VI.  Petitioner was arrested without probable cause.

> VII.  Petitioner was denied effective assistance of appellate counsel because his attorney did raise the above errors in Petitioner's appeal as of right.

> VIII.  If each and every error by itself did not deny Petitioner a fair trial, the cumulative effect of those errors denied him a fair trial.

## II.    STANDARD OF REVIEW

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

4

Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d); Harpster v. State of Ohio, 128 F.3d 322, 326 (6th Cir. 1997).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. Id., at 412-413. A federal *habeas* court may not find a state adjudication to be unreasonable "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.

Finally, the term "clearly established federal law" refers to the holdings as opposed to the *dicta* of the U.S. Supreme Court's decisions at the time of the relevant state court decisions. Id., at 412. With the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2244(d), Congress limited the source of law for federal *habeas* relief to cases decided by the U.S. Supreme Court. Herbert v. Billy, 160 F.3d 1131, 1135 (6th Cir. 1998). However, to the extent that lower or inferior federal courts have decided factually similar cases, references to these decisions by a federal *habeas* court is appropriate or relevant in determining whether the state court's application of U.S. Supreme Court law was reasonable or unreasonable. Haynes v. Burke, 115 F.Supp. 2d 813, 817 (E.D. Mich. 2000); See also Mountjoy v. New Hampshire State Prison, 245 F.3d 31, 35-36 (1st Cir. 2001); Hull v. Kyler, 190 F.3d 88, 104 (3d Cir. 1999); Atley

5

v. Ault, 191 F.3d 865, 871 (8th Cir. 1999).

## III.    ANALYSIS

### A.    Sufficiency of the Evidence

Petitioner first claims that there was insufficient evidence of premeditation and deliberation to support the first degree murder charge.  A *habeas* court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  "Because a claim of insufficiency of the evidence presents a mixed question of law and fact, this Court must determine whether the state court's application of the Jackson standard was reasonable."  Malcum v. Burt, 276 F.Supp. 2d 664, 686 (E.D. Mich. 2003).  The scope of review in a federal *habeas* proceeding to the sufficiency of evidence in a state criminal prosecution, "is extremely limited and a *habeas* court must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state and defer to that resolution."  Terry v. Bock, 208 F.Supp. 2d 780, 794 (E.D. Mich. 2002).  The *habeas* court does not substitute its judgment for that of the finder of fact.  United States v. Jackson, 55 F.3d 1219, 1225 (6th Cir.1995).

This Court must determine whether the state court's application of the Jackson standard was contrary to, or an unreasonable application of, United States Supreme Court precedent. When making this determination, this Court must grant the state court's findings of fact a presumption of correctness, unless it is established by clear and convincing evidence that the factual determination in the state court was erroneous.  Williams v. White, 183 F.Supp. 2d 969,

974 (E.D. Mich. 2002)(internal citations omitted). Petitioner has failed to establish that the Michigan Court of Appeals' findings of facts in resolving his sufficiency of evidence claim were clearly erroneous. Because Petitioner has not challenged the accuracy or completeness of the Michigan Court of Appeals' findings of fact, this Court will rely on them in resolving Petitioner's sufficiency of evidence claim.

In Michigan, a first degree murder conviction requires that the state establish that a defendant's intentional killing of another was deliberated and premeditated. Grant v. Rivers, 920 F.Supp. 769, 786 (E.D. Mich. 1996)(quoting People v. Coddington, 188 Mich. App. 584, 599, 470 N.W.2d 478 (Mich Ct. App. 1991)). The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. Johnson v. Hofbauer, 159 F.Supp. 2d 582, 596 (E.D. Mich. 2001)(citing People v. Anderson, 209 Mich. App. 527, 537, 531 N.W.2d 780 (Mich Ct. App. 1995)). "Premeditation may be established through evidence of the following factors: 1) the prior relationship of the parties; 2) the defendant's actions before the killing; 3) the circumstances of the killing itself, and; 4) the defendant's conduct after the homicide." People v. Anderson, 531 N.W.2d 780, 786 (Mich. Ct. App. 1995).

Under Michigan's first-degree murder statute, the interval between the thought and action should be long enough to give a reasonable person sufficient time to subject his or her actions to a "second look" in order to prove premeditation and deliberation. Alder v. Burt, 240 F.Supp. 2d 651, 663 (E.D. Mich. 2003)(citing People v. Morrin, 31 Mich. App. 301, 187 N.W.2d 434 (Mich Ct. App. 1971)). "A few seconds between the antagonistic action between the defendant and the victim and the defendant's decision to murder the victim may be sufficient to create a jury question on the issue of premeditation." Id. Premeditation and deliberation may be inferred

from the type of weapon used and the location of the wounds inflicted.  People v. Berry, 497 N.W.2d 202, 204 (Mich. Ct. App. 1993).  Use of a lethal weapon will support an inference of an intent to kill.  People v. Turner,  233 N.W.2d 617, 619 (Mich. Ct. App. 1975).

In the present case, there was sufficient evidence from which a rational trier of fact could conclude that Petitioner acted with premeditation and deliberation.  In rejecting his claim, the Michigan Court of Appeals noted that Bell was shot twice, once in the back of her neck and once in her back.  See Jordan v. State, 147 S. W. 3d 691, 695 (Ark. 2004)(nature of victim's wounds eliminated possibility shooting accidental), Owens v. State, 509 S.E. 2d 905, 907 (Ga. 1999)(location of bullets inconsistent with accidental shooting story).  Petitioner testified, consistent with his statement to police, that he and Bell argued while in the van, that Bell took a gun out of her purse, and that as he attempted to get the gun away from her, it went off twice.  However, there was no evidence of close range firing and no evidence of shots fired inside the van.  In addition, Bell's body was discovered leaning up against the front tire of the van in a pool of blood, and although blood was discovered on the outside of the van, none was discovered inside.  Petitioner's failure to call 911 after the shooting is also inconsistent with his assertion that the shooting was accidental.  Instead of calling 911, he called Hooks to come pick him up.  Further, Petitioner did not attempt to attract the attention of two police cars that passed by before Hooks arrived.  See Delisle v. Rivers, 161 F. 3d 370, 389 (6th Cir. 1998)(circumstantial evidence of premeditation established by petitioner's failure to help victims after car drove into lake), Healy v. Maggio, 706 F. 2d 698, 700 (5th Cir. 1983)(leaving victim to bleed to death in the car a sign that the killing intentional not accidental).  Moreover, after telling Hooks that he had accidentally shot Bell, Petitioner asked Hooks what she thought of him.  Hooks testified that

8

when she replied that it made her wonder what he would do to her, Petitioner stated, "I'd never do that to you." Therefore, Petitioner has failed to establish that the Michigan Court of Appeals' findings of facts in resolving his sufficiency of evidence claim were clearly erroneous.

### B.    Ineffective Assistance of Trial Counsel

Petitioner claims that trial counsel was ineffective for failing to file a motion to suppress his statements to the police, for failing to convey a plea offer, and for failing to aggressively pursue plea bargain negotiations. When seeking a writ of *habeas corpus* based on ineffective assistance of counsel, the petitioner carries a heavy burden. The Supreme Court has held:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).

> Judicial scrutiny of counsel's performance must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id., at 689 (quoting Michel v. Louisiana, 350 U.S. 91 at 101 (1955)). Under the AEDPA, it is not enough for a federal *habeas* petitioner who alleges ineffective assistance of counsel to convince a federal *habeas* court that, in its independent judgment, the state court decision applied the Strickland standard incorrectly. Instead, a *habeas* petitioner must show that the state court applied Strickland to the facts of the case in an objectively unreasonable manner. Bell v. Cone, 535 U.S. 685, 698-699 (2002). If an alleged error by counsel was not prejudicial, a federal court need not determine whether counsel's performance was constitutionally deficient.

9

See McMeans v. Brigano, 228 F. 3d 674, 686 (6th Cir. 2000)(citing Strickland, 466 U.S. at 697).

The Michigan Court of Appeals found that Petitioner was not prejudiced by his counsel's failure to seek suppression of his statements to the police because his initial statement denied any involvement, and his second statement was also exculpatory, and mirrored his trial testimony that the shooting was accidental, and thus exculpatory. The court of appeals also held that Petitioner's counsel was not ineffective for failing to convey a plea offer because the court found that no plea offer had actually been made. The determination that no plea offer was made is a factual determination that is presumed correct, and Petitioner has not met his burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Further, the court applied the correct standard to assess counsel's conduct. After reviewing the court of appeals ruling, this Court concludes that it was neither a decision that was contrary to, or involved an unreasonable application of, Supreme Court precedent, nor a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Therefore, Petitioner is not entitled to *habeas* relief on these claims of ineffective assistance of counsel.

However, the court of appeals did not address Petitioner's claim that his counsel was ineffective for failing to make another offer after her initial offer was rejected.[1] "Exploring possible plea negotiations is an important part of providing adequate representation of a criminal client." Mannhalt v. Reed, 847 F.2d 576, 582 (9th Cir. 1988). However, this is not a case where

---

[1] The Court notes that Petitioner is not alleging that his attorney did not make a counteroffer, because she made the initial offer that was rejected. Thus, the prosecutor was in position to make a counteroffer. Thus, Petitioner claims his attorney was not functioning as counsel guaranteed by the Sixth Amendment when she did not extend a new offer.

counsel completely failed to enter plea negotiations.  The prosecutor, Tom Beadle, told Petitioner's trial counsel, June Porter, that manslaughter was unacceptable plea.  Beadle testified that if Petitioner would have offered to plead guilty to second-degree murder, and accepted a sentence at the upper limits of the guidelines, he would have taken the offer to his supervisor. Porter testified that she did not seek a second-degree murder plea, because she assumed it would not be accepted after the prosecutor told her that a first-degree charge would be the only acceptable offer.  Thus, the question is whether the failure of Petitioner's attorney to make a new offer, after the initial offer was rejected, constitutes ineffectiveness of counsel.  In order to demonstrate that counsel provided inadequate representation during plea negotiations, Petitioner must show that: 1) his attorney's "acts or omissions were outside the wide range of professionally competent assistance,"  Strickland, 466 U.S. at 690, and; 2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id., at 694.

The Court is reluctant to hold that Porter's failure to continue to make plea offers after the first one was rejected falls outside the wide range of professionally competent assistance. While the Court recognizes that "[e]xploring possible plea negotiations is an important part of providing adequate representation of a criminal client," a line drawing problem emerges once the plea negotiation process has gone past the initial exploration stage of the negotiations, and a firm offer was extended and rejected.  Mannhalt, 847 F.2d at 582.  How many offers must an attorney make to an unreceptive prosecutor until the representation falls within the wide range of professionally competent representation?  Therefore, the Court finds that Porter's failure to make a second, unrequited plea offer does not fall outside the range of professional competence.

11

Even if the Court were to find that Porter's representation fell outside the range of professional competence, Petitioner must show that he was prejudiced by her conduct. To determine if a *habeas* petitioner was prejudiced by his attorney's performance, "it is necessary to determine if the proceeding was fundamentally unfair or unreliable; a court should not focus the analysis on the outcome." Kinnard v. U.S., 313 F.3d 933, 935 (6th Cir. 2002). Porter's failure to further pursue plea negotiations, after initially being rebuffed, did not render the proceeding fundamentally unfair or unreliable. Therefore, Petitioner is not entitled to *habeas* relief on this claim of ineffective assistance of counsel.

### C.      Prosecutorial Misconduct

Petitioner's third claim alleges that the prosecutor engaged in improper vouching. A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." Caldwell v. Russell, 181 F.3d 731, 737 (6th Cir. 1999)(internal citations omitted).

It is worth noting that the Sixth Circuit has never granted *habeas* relief for improper vouching. Byrd v. Collins, 209 F.3d 486, 537 and n. 43 (6th Cir. 2000). When analyzing a claim of prosecutorial misconduct, a court must initially decide whether the challenged statements were improper. Boyle v. Million, 201 F. 3d 711, 717 (6th Cir. 2000). If the conduct is improper, the district court must then examine whether the statements or remarks are so flagrant as to constitute a denial of due process and warrant granting a writ. Id. In the present

12

case, Petitioner points to only one statement by the prosecutor which allegedly amounted to improper vouching:

> When I took that oath as a prosecutor, it was to uphold justice. And the constitution to the United States and also of the state. That's my job. I don't have a loyalty to Mr. Berry. I like him. But I do not have a loyalty to him. I do not have a loyalty to overcharge. I have a loyalty to truth. I have a loyalty to justice.

Petitioner claims that the prosecutor placed the weight and prestige of his office in support of the theory that first degree murder was not an overcharge. However, in closing arguments, a prosecutor is entitled to make a fair response and rebuttal when the defense attacks the government's case. United States v. Flynn, 196 F.3d 927, 930 (8th Cir. 1999), see also United States v. Williams, 97 F. 3d 240, 246 (8th Cir. 1996)(when a prosecutor, his witnesses, or the work of government agents is attacked by defense counsel, the prosecutor is entitled to make a fair response). In the present case, the Michigan Court of Appeals rejected this claim, by stating that the prosecutor's remarks were merely responsive to the defense counsel's arguments that the prosecutor overcharged the offense. The prosecutor's argument in rebuttal was merely a fair response to the defense counsel's attack upon the prosecutor's case. The comment by the prosecutor was not so egregious that Petitioner was denied due process. See United States v. Emenogha, 1 F.3d 473, 481 (7th Cir. 1993). Moreover, the prosecutor's conduct was not flagrant or repeated. Nor was the appeals court decision is not an unreasonable application of Supreme Court precedent. In light of the foregoing, this Court concludes that Petitioner's prosecutorial misconduct claim is without merit.

**D.     Jury Instruction**

13

Petitioner next claims that the trial court failed to properly instruct the jury that the defense of accident was available as a defense to the lesser offense of manslaughter, as well as to the first degree murder and second degree murder charges. The trial court instructed the jury on first degree murder, second-degree murder, and involuntary manslaughter. Petitioner did not request a voluntary manslaughter instruction at trial. The Michigan Court of Appeals denied relief on this claim. The court of appeals held that any error in failing to instruct the jury on voluntary manslaughter was harmless because the jury was instructed on two lesser included offenses, and nevertheless found Petitioner guilty of the charged greater offense of first-degree murder. The court of appeals also found that the instructions were adequate given the facts and circumstance, and the evidence presented at trial.

To warrant *habeas* relief Petitioner has the burden of showing that the jury instructions were not only erroneous,

> but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair. This burden is even greater than that required to demonstrate plain error on direct appeal. Allegations of "trial error" raised in challenges to jury instructions are reviewed for whether they had a substantial and injurious effect or influence on the verdict, and are subject to harmless-error analysis.

Scott v. Mitchell, 209 F. 3d 854, 882 (6th Cir. 2000)(citations omitted). Thus, the question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. Henderson v. Kibbee, 431 U.S. 145, 154-55 (1977). The challenged instruction may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial court record. Grant v.

14

Rivers, 920 F.Supp. 769, 784 (E.D. Mich. 1996).

Petitioner cannot meet his burden because there was insufficient evidence for a jury to reach a verdict of voluntary manslaughter.  An instruction on voluntary manslaughter was not warranted, in spite of Petitioner's story that gun discharged accidentally, in light of location of wounds and his conduct after the shooting.  Scott v. Elo, 302 F.3d 598, 606 (6th Cir. 2002).  Bell was shot twice, once in the back of the neck, and once in the back.  It is unlikely that the bullets would have entered those points while struggling for control of a gun inside the van.  It is also hard to imagine a scenario where such a shooting would result in a complete lack of physical evidence inside the van.  Equally damaging to his claim of accident is Petitioner's conduct after the shooting.  Moreover, while the Supreme Court has held that it is a violation of due process to omit an instruction on a lesser included offense supported by the evidence in a capital case, it has not reached the same conclusion in noncapital cases.  See Beck v. Alabama, 447 U.S. 625, 627 (1980).  However, the Sixth Circuit has held that failure to instruct on a lesser included offense in a noncapital case is not "such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure."  Bagby v. Sowders, 894 F.2d 792, 797 (6th Cir.1990).  Accordingly, Petitioner is not entitled to *habeas* relief on this claim.

### E.    Petitioner's Remaining Claims

Respondent contends that Petitioner's fifth, sixth, seventh, and eighth claims are procedurally defaulted.  These claims involve the alleged unconstitutional arrest and questioning by the Highland Park Police, ineffective assistance of appellate counsel, and the cumulative effect of the alleged errors.

15

When the state courts clearly and expressly rely on a valid state procedural bar, federal *habeas* review is also barred unless a petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice," i.e., that Petitioner is actually innocent. Coleman v. Thompson, 501 U.S. 722, 750-751 (1991). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488, (1986). If a petitioner fails to show cause for his procedural default, the Court need not reach the prejudice issue. Smith v. Murray, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. Carrier, 477 U.S. at 479-480. In order for such an actual innocence claim to be credible, a petitioner must support the allegations of constitutional error with new reliable evidence that was not presented at trial. Schlup v. Delo, 513 U.S. 298, 324 (1995). Moreover, actual innocence means factual innocence, not mere legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998).

"The petitioner must also prove that he was actually prejudiced by the claimed constitutional error. Accordingly, the prejudice component of the cause and prejudice test is not

satisfied if there is strong evidence of a petitioner's guilt and a lack of evidence to support his claim." Rust v. Zent, 17 F.3d 155, 161-62 (6th Cir. 1994)(citations omitted).

In the present case, Petitioner raised these four claims for the first time in his post-conviction motion for relief from judgment.  The Michigan appellate courts relied upon M.C.R. 6.508(D) in denying petitioner leave to appeal the denial of his motion.  This brief statement is sufficient to constitute a procedural bar to federal *habeas* relief.  <u>See</u> <u>Simpson v. Jones</u>, 238 F.3d 399, 407- 08 (6th Cir. 2000)(rejecting the idea that a brief form order by the Michigan Supreme Court denying post-conviction relief pursuant to M.C.R. 6.508(D) was an unexplained order that could not serve to procedurally default a *habeas* petitioner).  Therefore, in order for Petitioner to be entitled to *habeas* relief for these remaining claims, he must establish cause for the procedural default and actual prejudice, or if there is an absence of cause, actual innocence.

       1.   <u>Ineffective Assistance of Appellate Counsel</u>

In the present case Petitioner merely states that appellate counsel's failure to raise some of the issues to the Michigan Court of Appeals raised in his *habeas* petition, without identifying which issues, deprived him of appellate counsel guaranteed by the Sixth Amendment.  If Petitioner could show that he received ineffective assistance of appellate counsel that rose to the level of a Sixth Amendment violation, it would excuse his procedural default for failing to raise his claims on his direct appeal in the state courts.  <u>Seymour v. Walker</u>, 224 F.3d 542, 550 (6th Cir. 2000).  "Though ineffective assistance of counsel may constitute cause, <u>Murray v. Carrier</u>, 477 U.S. at 488, 106 S.Ct. at 2645, 'the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.'" <u>Rust v. Zent</u>, 17 F.3d 155, 161 (6th Cir. 1994).  Therefore, because Petitioner alleges that appellate counsel failed to raise certain claims, he cannot establish cause.  Thus, in order for the Court to consider the constitutional claim presented, Petitioner

must support the allegations of constitutional error with new reliable evidence of actual innocence that was not presented at trial. Petitioner has presented no new evidence that was not presented at trial, and therefore, he is not entitled to *habeas* relief on his ineffective assistance of appellate counsel claim.

2.     <u>Petitioner's Fourth and Fifth Amendment Claims</u>

Petitioner claims that his statement to the police was coerced, and that the police denied him the right to counsel in violation of the Fifth Amendment. Petitioner also contends that his arrest was illegal and that any evidence, namely his statement to the police, should have been suppressed under the Fourth Amendment because it is fruit of a poisonous tree. As discussed above, Petitioner must show cause for the procedural default and actual prejudice resulting from the default, or that he is actually innocent, in order to be entitled to *habeas* relief.

Even if Petitioner could show cause, he could not establish that he was prejudiced by the use of his statement as evidence at trial. Admission of his statement is harmless error in light of the fact that Petitioner's second statement mirrored his trial testimony and was largely exculpatory. <u>See</u> Section III, Part B above, <u>Walendzinski v. Renico</u>, 354 F.Supp. 2d 752, 761 (E.D. Mich. 2005), <u>Pope v. Zenon</u>, 69 F. 3d 1018, 1025 (9th Cir. 1995), <u>Parker v. Singletary</u>, 974 F. 2d 1562, 1576-77 (11th Cir. 1992). Likewise, any violation of Petitioner's <u>Miranda</u> rights was harmless because his statements to the police were not directly inconsistent with his accidental shooting defense. <u>See</u> <u>Pope v. Zenon</u>, 69 F.3d 1018, 1025 (9th Cir. 1995). In light of the fact that the overall effect of Petitioner's statements to the police was exculpatory, the admission of his statements, even if taken in violation of Petitioner's Fifth Amendment right to counsel, was harmless error at best. <u>See e.g.</u> <u>Parker v. Singletary</u>, 974 F.2d 1562, 1576-77 (11th Cir. 1992).

18

Therefore, Petitioner is not entitled to *habeas* relief on his Fourth and Fifth Amendment claims.

3.      Cumulative Error

Finally, Petitioner alleges that he was deprived of a fair trial because of cumulative error. Petitioner claims that even if the alleged errors were insufficient by themselves to deprive him a of fair trial, the cumulation of those errors deprived him of a fair trial.  However, the Sixth Circuit has noted that the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant *habeas* relief."  Lorraine v. Coyle, 291 F. 3d 416, 447 (6th Cir. 2002).  Therefore, Petitioner is not entitled to *habeas* relief on his cumulative errors claim.  Id., see also Salters v. Palmer, 271 F.Supp. 2d 980, 992 (E.D. Mich. 2003).

**IV.**     **CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that Petitioner Herbert Newman's Petition for a Writ of *Habeas Corpus* is **DENIED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATED: December 5, 2005

**CERTIFICATE OF SERVICE**

Copies of this Order were mailed to Joan Ellerbusch Morgan and William C. Campbell, on this date by ordinary mail and/or electronic filing.

s/Bernadette M. Thebolt
DEPUTY CLERK